**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

ROBERTO RODRIGUEZ, JR.,                                    Case No.

                              Plaintiffs,                  **COMPLAINT**

        -against-
                                                           **Jury Trial Demanded**
QUALITY AUTOMOTIVE SERVICES, INC.,
ROSEANNE BENJAMIN, ANTHONY ALFARO,
and JOHN DOE 1 a/k/a "HRATCH",

                              Defendants.
-------------------------------------------------------------X

Plaintiff Roberto Rodriguez, Jr. ("Rodriguez" or "Plaintiff") alleges against Defendants

Quality Automotive Services, Inc., ("Quality"), Roseann Benjamin ("Benjamin"), Anthony

Alfaro ("Alfaro), and John Doe 1 aka "Hratch" ("Hratch") (collectively, "Defendants") upon

information and belief, as follows:

## NATURE OF THE CLAIMS

1. Quality operates as a for-profit business offering roadside assistance, towing services,
   and automobile repair.

2. Benjamin, Alfaro, and Hratch are co-owners and operators of Quality.

3. Defendants employed Rodriguez as a tow truck driver.

4. Rodriguez was a dedicated and reliable employee of Defendants with no record of
   disciplinary action.

5. Defendants maintained a pattern and practice of failing to pay Plaintiff the minimum
   wage for all hours worked, the overtime rate of one-and-one-half (1 ½) times the
   regularly hourly rate/applicable minimum wage rate for all hours worked in excess of

forty per week, and spread-of-hours pay for each workday his shift or shifts exceeded 10 hours per day.

6. Defendants regularly paid Plaintiff a flat fee per shift scheduled, in cash, regardless of how many hours Plaintiffs worked in each shift and of how many hours Plaintiffs worked per week, including hours over forty. This payroll scheme is an obvious and willful avoidance of Defendants' obligation to pay minimum wage and overtime, as required under state and federal law.

7. Defendants also failed to furnish to Plaintiff annual wage notices and complete, accurate pay statements.

8. Defendants further failed to maintain an accurate record keeping of hours worked and wages paid to Plaintiff.

9. Defendants have systematically and repeatedly ignored the requirements of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and the New York Labor Law § 190, *et seq*. ("NYLL"). Plaintiff seeks relief for Defendants' unlawful actions, including compensation for unpaid minimum wages, overtime wages, spread-of-hours pay, liquidated damages, statutory civil damages, pre- and post-judgment interest, compensatory damages, and attorney's fees and costs, pursuant to the FLSA and NYLL.

10. Rodriguez further seek to recover damages to redress the injuries he suffered as the result of being retaliated against by Defendants for complaining of Defendants' improper pay practices, in violation of the FLSA and NYLL § 215.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this district.

13. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

**Plaintiff Rodriguez**

14. Rodriguez was and is a resident of Queens County, New York.

15. From approximately March 2018 to July 17, 2020, Rodriguez was employed by Defendants as a tow truck driver.

16. At all times relevant to this action, Rodriguez was an employee engaged in commerce or the production of goods for commerce on behalf of Defendants.

17. At all times relevant to this action, Rodriguez was an employee of Quality within the meaning of the FLSA and NYLL.

**Defendant Quality**

18. Quality was and is a domestic business corporation organized and existing under the laws of the State of New York.

19. From the commencement of Plaintiff's employment with Quality until in or around 2019, Quality's principle place of business was located at 370 Devoe Street, Brooklyn, New York 11211.

20. At all times relevant to this action, since in or around 2019, Quality's principle place of business was and is located at 122-28 Farmers Boulevard, Springfield Gardens, New York 11413.

21. Quality is a business or enterprise engaged in interstate commerce within the meaning of the FLSA.

22. Quality has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

23. Quality has an annual gross volume of sales made or business done in excess of $500,000.

24. At all times relevant to this action, Quality is and was an employer of Plaintiff within the meaning of the FLSA and NYLL.

**Defendant Benjamin**

25. Upon information and belief, Benjamin is a resident of the State of New York.

26. At all times relevant to this action, Benjamin served as a principal, officer, owner, and/or manager of Quality.

27. At all times relevant to this action, Benjamin possesses or possessed operation control and policy making authority, an ownership interest, or significant control of Quality.

28. Benjamin possessed and/or exercised the power and authority to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, and determine terms and conditions of Plaintiff's employment.

29. Employees of Quality, including Plaintiff, could complain to Benjamin regarding any of the terms of their employment, and Benjamin would have the authority to effect any changes to the quality and terms of their employment.

30. The acts of Quality charged in this Complaint were authorized, directed, or accomplished by Benjamin, individually or through her agents, officers, employees, or representatives, while actively engaged in the management and/or ownership of Quality.

31. Benjamin is personally jointly and severally liable for the violations of the FLSA and NYLL by Quality.

**Defendant Alfaro**

32. Upon information and belief, Alfaro is a resident of the State of New York.

33. At all times relevant to this action, Alfaro served as a principal, officer, owner, and/or manager of Quality.

34. At all times relevant to this action, Alfaro possesses or possessed operation control and policy making authority, an ownership interest, or significant control of Quality.

35. Alfaro possessed and/or exercised the power and authority to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, and determine terms and conditions of Plaintiff's employment.

36. Employees of Quality, including Plaintiff, could complain to Alfaro regarding any of the terms of their employment, and Alfaro would have the authority to effect any changes to the quality and terms of their employment.

37. The acts of Quality charged in this Complaint were authorized, directed, or accomplished by Alfaro, individually or through his agents, officers, employees, or representatives, while actively engaged in the management and/or ownership of Quality.

38. Alfaro is personally jointly and severally liable for the violations of the FLSA and NYLL by Quality.

**Defendant Hratch**

39. Upon information and belief, Hratch is a resident of the State of New York.

40. At all times relevant to this action, Hratch served as a principal, officer, owner, and/or manager of Quality.

41. At all times relevant to this action, Hratch possesses or possessed operation control and policy making authority, an ownership interest, or significant control of Quality.

42. Hratch possessed and/or exercised the power and authority to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, and determine terms and conditions of Plaintiff's employment.

43. Employees of Quality, including Plaintiff, could complain to Hratch regarding any of the terms of their employment, and Hratch would have the authority to effect any changes to the quality and terms of their employment.

44. The acts of Quality charged in this Complaint were authorized, directed, or accomplished by Hratch, individually or through his agents, officers, employees, or representatives, while actively engaged in the management and/or ownership of Quality.

45. Hratch is personally jointly and severally liable for the violations of the FLSA and NYLL by Quality.

## PLAINTIFF'S FACTUAL ALLEGATIONS

46. On or around March 1, 2017, Rodriguez commenced employment with Quality.

47. When Rodriguez first commenced employment with Quality, he reported to work out of the garage located at 370 Devoe Street, Brooklyn, New York 11211 (the "Devoe location").

48. In or around the beginning of October 2017, Rodriguez left his employment with Quality.

49. On or around February 1, 2019, Rodriguez recommenced employment with Quality.

50. When Rodriguez recommenced employment with Quality, Quality had moved locations and began operating at the premises located at 122-28 Farmers Boulevard, Springfield Gardens, New York 11413 (the "Farmers location").

51. For the duration of his employment with Quality, Rodriguez was a tow truck operator.

52. After Quality moved its operations from the Devoe location to the Farmers location, Rodriguez reported to the Farmers location for the remainder of his employment with Quality.

53. In his capacity as a tow truck operator, Rodriguez's duties and responsibilities included, but were not limited to: responding to dispatches for stranded motorists and disabled vehicles within the State of New York, assisting motorists stranded within the State of New York, and towing disabled vehicles and their occupants from their location within the State of New York to Quality's garage.

54. For the entirety of his employment with Quality, Rodriguez was a non-exempt employee.

55. Rodriguez satisfactorily performed his duties and responsibilities.

56. Prior to commencing his employment with Quality, Rodriguez had over 20 years of experience as a tow truck driver.

57. Throughout his career as a tow truck driver, including for the duration of his employment with Quality, Rodriguez has maintained a "clean" license.

58. For the duration of his employment with Quality, Rodriguez was assigned a 12-hour daily scheduled shift, six days per week.

59. Rodriguez's regularly scheduled shift was 10:00 a.m. to 10:00 p.m. however, Alfaro frequently shifted Rodriguez's scheduled start and end time, maintaining the 12-hour daily shift schedule.

60. Despite Rodriguez's 12-hour daily scheduled shift, on an almost daily basis throughout Rodriguez's employment with Quality, Alfaro required Rodriguez to answer calls several hours before the start of his scheduled shift.

61. Despite Rodriguez's 12-hour daily scheduled shift, on an almost daily basis throughout Rodriguez's employment with Quality, Alfaro required Rodriguez to answer calls near the end of his scheduled shift, resulting in Rodriguez performing work for several hours after the end of his scheduled shift.

62. Rodriguez is a cancer survivor.

63. Throughout his employment with Quality, other than to attend an appointment with his oncologist every few months, Rodriguez never left work before the end of his scheduled shift.

64. As a result, Rodriguez actually performed an approximate average of 15 hours of work per day, six days per week, while employed by Defendants.

65. Every day Rodriguez performed work for Defendants, he worked more than ten (10) hours per day, except on the occasions when Rodriguez had a scheduled doctor's appointment.

66. Rodriguez intentionally scheduled doctor's appointments for as late in his shift as possible, so not to miss work.  On days when Rodriguez had a scheduled doctor's appointment, he ended his shift approximately one hour prior to the end of his scheduled shift.

67. On the few occasions where Rodriguez was forced to end his shift an hour before the scheduled end of the shift to attend a doctor's appointment, he notified Alfaro on every occasion.

68. Alfaro forced Rodriguez to make up any hours "missed" due to Rodriguez attending his doctor's appointments.  On some occasions, Alfaro required Rodriguez to work on his scheduled weekly day off to make up the hour he missed to attend his doctor's appointment.

69. As a result, Rodriguez did not work fewer hours than scheduled as a result of attending his doctor's appointment.

70. Before he commenced employment with Defendants, Defendants promised to pay Rodriguez at the rate of $15.00 per hour.

71. Defendants further promised to pay Rodriguez a commission on all customers Rodriguez towed who subsequently had their vehicles repaired at Quality's auto repair shop.

72. However, Quality paid Rodriguez between $500 and $600 in cash per week, regardless of how many hours per week he worked.

73. Every Friday during Rodriguez's employment with Quality, Alfaro or Hratch handed Rodriguez an envelope containing cash pay for the previous week's work.

74. During his employment with Defendants, approximately forty (40) customers towed by Rodriguez subsequently had their vehicles repaired at Quality's auto repair shop.

75. Despite Defendants' promise to pay Rodriguez a commission on all customers Rodriguez towed who subsequently had their vehicles repaired at Quality's auto repair shop, Defendants did not pay Rodriguez any commission.

76. Throughout Rodriguez's employment with Defendants, Defendants did not maintain a punch clock or log of hours signed by Rodriguez to record the hours Rodriguez worked.

77. Instead, Rodriguez's hours were recorded by a dispatcher writing down the time Rodriguez took his radio at the beginning of his shift and dropped off his radio at the end of his shift.

78. Because the dispatchers were routinely distracted by calls and their other duties, their recordation of the times Rodriguez picked up and dropped off his radio was not contemporaneous and was frequently inaccurate.

79. For the duration of his employment with Quality, Defendants did not pay Rodriguez the applicable minimum wage for all hours worked under the FLSA and NYLL.

80. For the duration of his employment with Quality, Defendants did not pay Rodriguez the one-and-one-half (1 ½) overtime premium rate for each hour he worked beyond 40 hours in a week.

81. For the duration of his employment with Quality, Defendants did not pay Rodriguez an additional hour of pay at the minimum wage for each day his shift work exceeded 10 hours.

82. For the duration of his employment with Quality, Defendants did not maintain a punch clock, employee-reported or endorsed log of hours, or other accurate record of hours worked by Rodriguez.

83. For the duration of his employment with Quality, Defendants failed to keep accurate records of wages earned or hours worked by Rodriguez.

84. For the duration of Rodriguez's employment with Defendants, Defendants failed to furnish Rodriguez with an accurate and complete statement with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

85. For the duration of his employment with Quality, Defendants did not provide Rodriguez with a wage notice setting forth his rate of pay, overtime rate, method of compensation, regular payday, names of his employers (including fictitious names), addresses and phone numbers for his employers' main offices or principal locations, or any allowances taken.

86. Rodriguez complained to Quality employees, managers, and ownership of their unlawful pay practices on numerous occasions throughout his employment with Quality.

87. Among several other complaints of Quality's unlawful pay practices, Rodriguez complained to Alfaro that he was not being paid for all hours he worked.

88. Rodriguez also complained of Quality's unlawful pay practices to Hratch and to Josie [last name currently unknown] ("Josie"), Quality's bookkeeper.

89. Despite Rodriguez's repeated complaints to his managers and other Quality employees with control over Rodriguez's pay, Quality refused to pay Rodriguez for all the hours he worked and for which he had not been compensated.

90. Additionally, subsequent to and despite Rodriguez's aforementioned complaints, Quality failed to correct their unlawful pay practices and continued to fail to pay Rodriguez for all the hours he worked.

91. On or about July 16, 2020, Rodriguez's scheduled shift was 9:00 a.m. to 9:00 p.m.

92. At approximately 8:30 p.m. on July 16, 2020, Rodriguez returned to the Quality garage at the Farmers location, having just completed a road tow.

93. Immediately upon his return, Alfaro demanded Rodriguez drive into Manhattan for another road tow.

94. Rodriguez reasonably estimated the time necessary to complete the job Alfaro assigned him as between two to two-and-a-half hours, which would have resulted in Rodriguez ending his shift around 11:00 p.m.—two hours after the end of his scheduled shift.

95. Rodriguez told Alfaro because the Manhattan job would require him to end his shift two hours later than scheduled and because Quality never paid him what he was owed for the hours he worked despite his repeated complaints of Quality's underpayment, he would not go to Manhattan for the tow job.

96. The next day—on or about July 17, 2020—Quality terminated Rodriguez.

97. Quality did not pay Rodriguez for the work he performed in the week leading up to his termination.

98. On or about July 17, 2020, immediately after Alfaro told Rodriguez he was fired, Rodriguez requested his last week's pay.

99. Alfaro and Hratch both refused to provide Rodriguez with the pay he was owed for his last week of work.

100.     On or about July 18, 2020, Rodriguez again attempted to speak with Alfaro regarding the pay he was owed for his overtime hours and for his last week of work.

101.     Alfaro responded that he "did not care" about Rodriguez's request to be fully compensated for his work and would do "whatever he needed to defend himself".

102.     Despite Rodriguez's repeated complaints to Alfaro, Defendants failed to provide Rodriguez his owed compensation.

103.     Quality terminated Rodriguez in retaliation for his objections to Quality's unlawful pay practices.

104.     Quality unlawfully withheld Rodriguez's last week of pay in retaliation for Rodriguez's objections to Quality's unlawful pay practices.

105.     As a result of Defendants' unlawful pay practices, including his retaliatory termination, Rodriguez has suffered and continues to suffer lost wages.

106.     Defendants violations of the FLSA and NYLL as relating to Rodriguez's employment with Quality have been willful.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Minimum Wage**

107.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

108.     Defendants were required to pay Plaintiff the applicable federal minimum wage rate.

109.     Defendants failed to pay Plaintiff the minimum wages to which he is entitled under the FLSA.

110.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

111.     Defendants' violations of the FLSA described above have been willful, and therefore, a three year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

112.     As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### New York Labor Law – Unpaid Minimum Wage

113.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

114.     Defendants failed to pay Plaintiff the minimum wages to which he is entitled under the NYLL.

115.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff minimum hourly wages.

116.     As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq*.

## THIRD CAUSE OF ACTION
### Fair Labor Standards Act – Unpaid Overtime

117.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

14

118.      Defendants are employers within the meaning of 29 U.S.C §§ 203(e) and 206(a) and employed Plaintiff.

119.      Defendants were required to pay Plaintiff one and one-half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours worked in excess of 40 hours in a workweek.

120.      Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the FLSA.

121.      Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff overtime wages.

122.      Defendants' violations of the FLSA described above have been willful, and therefore, a three year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

123.      As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants his unpaid overtime wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**

124.      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

125.      Under the NYLL and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff one and one half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours he worked in excess of forty (40) hours per week.

126.     Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the NYLL.

127.     Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff overtime wages.

128.     As a result of Defendants willful violations of the NYLL, Plaintiff is entitled to recover his unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq*.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Unpaid Spread-of-Hours

129.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

130.     Defendants have willfully failed to pay Plaintiff additional compensation of one hour's pay at the minimum hourly wage rate in all instances where Plaintiff worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, *et seq.* and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. Tit. 12 §§, 137-1.7 (2010), 146-1.6 (2012).

131.     As a result of Defendants willful violations of the NYLL, Plaintiff is entitled to recover unpaid spread-of-hours compensation, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to the NYLL.

## SIXTH CAUSE OF ACTION
### New York Labor Law – Wage Theft Prevention Act

132.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

133.     Defendants violated NYLL § 195(1) by failing to furnish Plaintiff, at the time of

hiring and on or before February 1st of each subsequent year of employment (when

applicable), with a notice containing the rate or rates of pay and basis thereof, whether

paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates

of pay and overtime rate or rates of pay if applicable; the regular pay day designed by the

employer in accordance with NYLL § 191; the name of the employer; any "doing

business as" names used by the employer; the physical address of the employer's main

office of principal place of business, and a mailing address if different; the telephone

number of the employer; and anything otherwise required by law.

134.     Due to Defendants' violations of NYLL§ 195(1), Plaintiff is entitled to statutory

penalties of $50.00 for each workday that Defendants failed to provide a wage notice, up

to a maximum of $5,000 each, reasonable attorneys' fees, costs and injunctive and

declaratory relief, as provided by NYLL § 198(1-b)

135.     Defendants violated NYLL § 195(3) by failing to furnish Plaintiff with a pay

statement containing each payment of wages and accurate statement listing the dates of

work covered by that payment or wages; name of employee; name of employer; address

and phone number of employer; rate of rates of pay and basis thereof, whether paid by

the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or

rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and

the number of overtime hours worked; gross wages, deductions, allowances, if any,

claimed as part of the minimum wage; and net wages.

136.     Through their failure to provide Plaintiff with a wage notice and accurate pay statements as required by the NYLL, Defendants have violated NYLL § 190, *et seq*. and the supporting New York State Department of Labor Regulations.

137.     Due to Defendants' violation of NYLL § 195(3), Plaintiff is entitled to statutory penalties of $250.00 for each workweek that Defendants failed to provide him with accurate pay statements, or a total of $5,000 each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL § 198(1-d).

**SEVENTH CAUSE OF ACTION**
**New York Labor Law – Record Keeping Violations**

138.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

139.     At all times relevant to this action, Defendants were and are required to establish, maintain and preserve for not less than six years, weekly payroll records that show for each employee, among other information, true and accurate payroll records and the number of hours worked daily and weekly, including the time of arrival and departure of each employee. NYLL § 195(4); 12 N.Y.C.R.R. § 142-2.6.

140.     Defendants violated the applicable NYLL and NYCRR provisions by not maintaining and preserving Plaintiff's time of arrival and departure and amount of compensation provided to Plaintiff for work performed.

**EIGHTH CAUSE OF ACTION**
**Fair Labor Standards Act – Retaliation**

141.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

142.     Plaintiff was an employee of Defendants within the meaning of the FLSA.

143.     Defendants were employers of Plaintiff within the meaning of the FLSA.

18

144.     29 U.S.C. § 215(a)(3) prohibits any person, "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

145.     While employed by Defendants, Plaintiff complained to Defendants about Defendants' unlawful employment practices, including failing to pay him the minimum wage for all hours worked.

146.     Plaintiff's complaints constitute protected activity under the FLSA.

147.     Despite and as a result of Plaintiff's complaints, Defendants refused to remediate their unlawful pay practices and continued their practice of failing to pay Plaintiff the minimum wage for all hours worked.

148.     As a result of Plaintiff's complaints, Defendants terminated Plaintiff's employment and did not pay him for work performed during his final week of work in Defendants' employ.

149.     A causal connection exists between Plaintiff's complaints of Defendants' unlawful failure to pay the minimum wage for all hours he worked and Defendants' continuation of their failure to pay Plaintiff the minimum wage for all hours he worked.

150.     A causal connection exists between Plaintiff's complaints of Defendants' unlawful failure to pay the minimum wage for all hours he worked and Defendants' termination of Plaintiff.

151.     A causal connection exists between Plaintiff's complaints of Defendants' unlawful failure to pay the minimum wage for all hours he worked and Defendants'

failure to pay Plaintiff for work performed for Defendants during his final week of work in Defendants' employ.

152.    Defendants violated 29 U.S.C. § 215(a)(3) by forcing Plaintiff to continue to accept sub-minimum wage for all hours worked, terminating his employment, and failing to pay Plaintiff for work performed for Defendants during his final week of work in Defendants' employ in retaliation for Plaintiff's complaints of Defendants' unlawful pay practices.

153.    Plaintiff is entitled to recover from Defendants lost wages and other compensatory damages, and an equal amount in liquidated damages, in addition to reasonable attorneys' fees, costs, declaratory and injunctive relief, as a result of Defendants' retaliatory conduct.

## NINTH CAUSE OF ACTION
### New York Labor Law – Retaliation

154.    Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

155.    Plaintiff was an employee of Defendants within the meaning of the NYLL.

156.    Defendants were employers of Plaintiff within the meaning of the NYLL.

157.    NYLL § 215(1) states, in part, "No employer or his or her agent, or the officer of agent of any corporation, partnership, or limited liability company…shall discharge, threaten, penalize or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…or his or her authorized representative…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter…[or] (iii) because such employee has caused to be instituted or is about to institute a proceeding

under or related to this chapter…or (v) because such employee has otherwise exercised rights protected under this chapter…"

158.	While employed by Defendants, Plaintiff complained to Defendants about Defendants' unlawful practices, policies and procedures of not being paid the minimum wage for all hours worked and requested to be paid minimum wage for all hours he worked.

159.	Plaintiff's complaints to Defendants constitute protected activity under NYLL § 215.

160.	A causal connection exists between Plaintiff's complaints of Defendants' improper pay practices and Defendants' decision to continue to underpay Plaintiff, to terminate Plaintiff's employment, and to fail to pay Plaintiff for the work he performed for Defendants during his final week of employment with Defendants.

161.	Defendants violated NYLL § 215 by forcing Plaintiff to continue to accept sub-minimum wage for all hours worked, terminating his employment, and failing to pay Plaintiff for work performed for Defendants during his final week of work in Defendants' employ in retaliation for Plaintiff's complaints of Defendants' unlawful pay practices.

162.	Plaintiff is entitled to recover from Defendants lost wages and other compensatory damages and statutory penalties, and an equal amount in liquidated damages, in addition to reasonable attorneys' fees, costs, declaratory and injunctive relief, as a result of Defendants' retaliatory conduct.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

A.  An order tolling the statute of limitations;

B.  A declaratory judgment that the practices complained of herein are unlawful under applicable federal and state law;

C.  An award of compensatory damages as a result of Defendants' failure to pay wages for all hours worked pursuant to the FLSA, NYLL and supporting regulations;

D.  An award of compensatory damages as a result of Defendants' failure to pay the applicable minimum wage for all hours worked pursuant to the FLSA, NYLL and supporting regulations;

E.  An award of compensatory damages as a result of Defendants' failure to pay overtime compensation for all hours worked in excess of 40 hours per week pursuant to the FLSA, NYLL and supporting regulations;

F.  An award of compensatory damages as a result of Defendants' failure to pay spread-of-hours compensation for all workdays greater in length than 10 hours pursuant to the NYLL and supporting regulations;

G.  An award of damages as a result of Defendants' failure to provide a wage notice upon Plaintiffs' hire or at any time subsequent thereto, pursuant to the NYLL and supporting regulations;

H.  An award of damages as a result of Defendants' failure to provide complete and accurate pay statements upon Plaintiffs at any time, pursuant to the NYLL and supporting regulations;

I.  An award of compensatory, liquidated, and statutory damages as a result of Defendants' retaliatory acts, pursuant to the FLSA, NYLL, and supporting regulations;

J.  Enjoining future violations of the FLSA and NYLL by Defendants;

K.  Declaring that Defendants' violations of the FLSA and NYLL were willful;

L.  Awarding Plaintiffs liquidated and/or punitive damages in amount equal to the total amount of wages found to be due, pursuant to the FLSA and NYLL;

M.  Awarding damages to the Plaintiffs, retroactive to the date of his termination, for all lost wages and benefits resulting from the Defendants' unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

N.  An award of prejudgment and post-judgment interest;

O.  An award of costs and expenses of this action together with reasonable attorneys' fees; and

P.  Such other relief this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Dated: January 25, 2021
New York, New York

Respectfully submitted,

**Akin Law Group PLLC**

*/s/ Justin Ames*

_____
Justin Ames
45 Broadway, Suite 1420
New York, NY 10006
(212) 825-1400
justin@akinlaws.com

*Counsel for Plaintiff*