UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
ROBERTO RODRIGUEZ, JR., :
:
                   Plaintiff, :
: <u>REPORT AND</u>
     -against- : <u>RECOMMENDATION</u>
:
QUALITY AUTOMOTIVE SERVICES, INC., : 21-CV-410 (HG)(MMH)
ROSEANNE BENJAMIN, ANTHONY ALFARO, :
and HRATCH KETCHELIAN, :
:
                 Defendants. :
------------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

      Plaintiff Roberto Rodriguez, Jr. brings this wage and hour action against Defendants Quality Automotive Services, Inc. ("Quality Automotive"), Roseanne Benjamin, Anthony Alfaro, and Hratch Ketchelian pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL") § 190 *et seq*. Before the Court is Plaintiff's third motion for sanctions, including terminating sanctions, pursuant to Fed. R. Civ. P. 37. (Mot., ECF No. 33.) The Honorable Hector Gonzalez referred the motion for report and recommendation. For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion should be **granted,** that default judgment should be entered against the Defendants, and that Plaintiff should be granted leave to seek damages, including attorneys' fees.

**I.    BACKGROUND**

      As alleged, Plaintiff is a tow truck driver with over 20 years' experience. (1st Am. Compl. ("FAC"), ECF No. 19 ¶ 56.) Defendant Quality Automotive offers roadside assistance, towing services, and automotive repair. (*Id.* ¶ 1.) Co-defendants Benjamin, Alfaro,

and Ketchelian are co-owners and operators of Quality Automotive. (*Id.* ¶ 2.) Defendants employed Plaintiff as a tow truck driver from approximately March 2017 to July 2020. (*Id.* ¶¶ 3, 46, 96.)

Plaintiff filed this action in January 2021 against Quality Automotive, Benjamin, Alfaro, and an unknown John Doe defendant, alleging failure to pay minimum wage, to pay overtime compensation, to provide wage notices, to pay spread of hours, and to provide accurate wage statements. (*See generally* Compl., ECF No. 1.) The Clerk of Court issued certificates of default in April 2021 after Defendants failed to answer or otherwise appear. (Entries of Default, ECF No. 10–11.) However, on April 26, 2021, Defendants appeared and answered the initial complaint. (ECF No. 12.)

The Court ordered the parties to exchange limited discovery to facilitate settlement and referred the parties to Court-annexed mediation, but the mediation was unsuccessful. (May 5, 2021 Order, ECF No. 14 ("FLSA Order"); ECF No. 17.) Plaintiff amended the Complaint to name Ketchelian as a defendant and Defendants answered in September 2021. (FAC, ECF No. 19; Answer to FAC, ECF No. 20.) After attempting to settle the matter, in May 2022, the Court ordered formal discovery. (*See* ECF No. 26.)

Subsequently, Plaintiff moved three times for terminating sanctions due to Defendants' failure to cooperate in discovery and to comply with Court orders. In the first motion, filed in August 2022, Plaintiff claimed that Defendants did not produce any discoverable materials after the parties completed limited informal discovery, and the work schedules and invoices Defendants did produce appeared fabricated. (ECF Nos. 27, 30 (attaching weekly work schedules for dates in January 2020 and March 2020.) In response, Defendants, while seeking additional time to produce the requested information, stated that Quality Automotive did not

2

have sufficient administrative staff resources to collect the relevant documents. (ECF No. 28 at 2.) At a motion conference in August 2022, the Court denied the motion without prejudice because Defendants produced some documents immediately before the conference. (Aug. 30, 2022 Tr., ECF No. 31 at 12:3–17.) However, the Court also admonished defense counsel for his clients' failure to comply with their discovery obligations and warned that further failure to comply could result in monetary or other sanctions. (Aug. 30, 2022 Minute Entry & Order.)

At a status conference in October 2022, during which clients and counsel appeared, Plaintiff moved for sanctions again, this time orally, because of ongoing deficiencies in Defendants' document production. (Oct. 6, 2022 Minute Entry & Order.) According to Plaintiff, in *Laboy v. Quality Automotive Services, Inc.*, No. 21-CV-2501 (RPK) (RML) (E.D.N.Y.), another FLSA action in this district, Defendants produced documents, including work schedules, that they did not produce in this action.[1] (Oct. 6, 2022 Tr., ECF No. 32 at 5:7–6:7, 15:23–16:7.) Defendant Benjamin acknowledged the existence of the documents and confirmed that she was aware that Defendants were required to produce these documents in discovery. (*Id.* at 16:19–25.) The Court advised Defendants regarding their discovery obligations under the Federal Rules of Civil Procedure and forbade them from falsifying documents in response to requests for production of contemporaneous records. (*Id.* at 10:24–12:4, 16:12–18:3, 23:1–24:4.) The Court warned that Defendants' continued failure to comply with discovery obligations would result in sanctions, including entry of default judgment. (*Id.* at 17:5–18:3.) The Court then directed Defendants to disclose relevant documents from the

---

[1] Plaintiff's counsel, defense counsel, and the Defendants (Quality Automotive, Benjamin, Alfaro, and Ketchelian) are the same in the *Laboy* action and this case.

3

*Laboy* production to Plaintiff's counsel immediately after the conference. (Oct. 6, 2022 Minute Entry & Order.)

The current, third, and still unopposed motion for sanctions describes more recent examples of Defendants' failure to produce responsive documents in this case. (Mot., ECF No. 33.) In addition to failing to fully produce the *Laboy* work schedules as ordered, Defendants did not respond to Plaintiff's deficiency letters. (*Id.*) At oral argument in December 2022, Plaintiff submitted hard copies of two different versions of relevant work schedules—one handwritten, one printed—for the same time period, from February 2020 through October 2020, that Defendants produced in this case and in *Laboy*. (*See* Dec. 6, 2022 Minute Entry & Order; Dec. 6, 2022 Tr., ECF No. 35 at 6:16–8:3.)

Three days after the motion hearing, on December 9, 2022, Defendants notified Plaintiff that they had located approximately 18 crates of responsive records pertaining to tow jobs performed by Quality Automotive's tow truck drivers from 2015 through 2020, and invited Plaintiffs to inspect these records. (Def. Dec. 9, 2022 Letter, ECF No. 34.) As of February 2023, Defendants had not produced the alleged responsive records located in December 2022 or any other documents since the third sanctions motion was filed on October, 2022. (Pl. Feb. 22, 2023 Letter, ECF No. 36.)

In June 2023, the Honorable Robert M. Levy issued an order in the *Laboy* action, pursuant Fed. R. Civ. P. 37, that: (1) imposed monetary sanctions; (2) directed Defendants to supplement their document production; and (3) in the event that Defendants did not comply with that order, precluded Defendants from using documents and asserting arguments to rebut the hours worked by plaintiff Laboy. *Laboy v. Quality Auto. Servs.*, No. 21-CV-2501 (RPK)(RML), 2023 U.S. Dist. LEXIS 112479 (E.D.N.Y. June 20, 2023).

4

## II.     LEGAL STANDARD

If a party "fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders[,]" including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). "Discovery sanctions under Federal Rule 37 are deterrents (specific and general) meant to punish a recalcitrant or evasive party." *In re Gravel*, 6 F.4th 503, 515 (2d Cir. 2021) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

"[D]istrict courts possess 'wide discretion' in imposing sanctions under Rule 37." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991)). "In imposing Rule 37 sanctions, courts properly consider various factors, including (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non–compliant party had been warned of the consequences of noncompliance." *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017) (cleaned up). "No single factor controls, and it is not an abuse of discretion for a district court to order a dispositive sanction even when not every factor weighs against the party to be sanctioned." *Aristidou v. Aviation Port Servs., LLC*, No. 18-CV-4040 (MKB)(RER), 2020 WL 10317398, at *12 (E.D.N.Y. Feb. 21, 2020) (citing *S. New England*

5

*Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144, 147–49 (2d Cir. 2010)), *adopted by* 2021 WL 2471269 (E.D.N.Y. June 17, 2021). "For less severe sanctions, such as fines and cost-shifting, the Court's inquiry focuses mainly on the misconduct of the responding party; for more severe sanctions, such as dismissal, preclusion[,] or the imposition of an adverse inference, the court must also assess whether the requesting party suffered prejudice as a result of the loss or withholding of evidence." *Laboy*, 2023 U.S. Dist. LEXIS 112479, at *13 (citation omitted).

### III.  DISCUSSION

#### A.  Willfulness of Defendants' Noncompliance

"A court may impose sanctions pursuant to Rule 37(b)(2)(A) only when the transgressing party has violated a prior court order." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020) (citation omitted). "Noncompliance with a court's discovery order is willful when the order is clear, the party understood the order, and the failure to comply is not due to factors beyond the party's control." *Aristidou*, 2020 WL 10317398, at *12 (collecting cases). The record here supports a finding of willful noncompliance.

Defendants did not comply with the FLSA Order requiring them to produce, by June 4, 2021, "[t]he time sheets or other time records and payroll records in the Defendant's possession, custody, or control that pertain to work the Plaintiff performed during the period for which the Plaintiff claims unpaid wages." (FLSA Order, ECF No. 14 at 1–2.)[2] At the August 30, 2022 hearing, defense counsel conceded that Defendants "did not perform as ordered" but did not explain the delay. (Aug. 30, 2022 Tr., ECF No. 31 at 10:16–20.)

---

[2] Other required documents included policies regarding compensation; documentary evidence to support any dispute regarding individual defendant liability; and financial documents if Defendants claimed financial hardship. (FLSA Order, ECF No. 14 at 2.)

6

Defendants also did not comply with an order to produce responsive documents from *Laboy* to Plaintiff by October 6, 2022 at 5:00 p.m. (Oct. 6, 2022 Minute Entry & Order.) Specifically, Defendants failed to produce printed work schedules from March 1, 2017 through December 27, 2018 (several of which purportedly identify Plaintiff), Quality Automotive's partial federal tax records for 2017 through 2020, and copies of Plaintiff's paychecks issued during his employment with Defendants. (Mot., ECF No. 33 at 3.)

Additionally, Defendants may have manipulated or fabricated documents in direct contravention of the Court's oral order at the October 6, 2022 hearing. (*See* Oct. 6, 2022 Tr., ECF No. 32 at 23:12–14 ("It is not acceptable that you create some new document that did not previously exist for the purpose of responding to discovery demands.").) Defendants produced two different versions of work schedules for the period between February 2020 through October 2020. In the version of the schedules produced in this case in July 2021, each weekly schedule is handwritten and Plaintiff's name is not listed:

[handwritten work schedule for WEEK OF 2/6/20]

However, in the version of the schedules produced in the *Laboy* action, the weekly schedule for the same time period is typewritten with handwritten corrections, and includes Plaintiff's name (Roberto) and others:

WEEK OF 2/6/20

| | Friday | Saturday | Sunday | Monday | Tuesday | Wednesday | Thursday |
|---|---|---|---|---|---|---|---|
| Noel | 6 - 4 | xx | xx | 6 - 4 | 6 - 4 | 6 - 4 | 6 - 4 |
| Travis | 7 - 4 | xx | x&10-6 | xx | 7 - 5 | 6 - 6 | 7 - 5 |
| Roberto | x - x | 6 - 4 | 6 - 2 | x - 4 | 6 - 2 | x - x | xx |
| Oscar | xx | | xx | | | | |
| Mike S | | | | | | | |

Concealing some records, producing conflicting handwritten schedules, and withholding other schedules from the same time period support a finding that Defendants acted willfully in their noncompliance of court orders to produce responsive documents.[3]

Finally, after the December 6 hearing, Defendants identified approximately 18 crates of records pertaining to tow jobs performed by Quality's tow truck drivers from 2015 through 2020. (Def. Dec. 9, 2022 Letter, ECF No. 34.) Defendants have "failed to provide a good-faith explanation for their neglect in producing . . . documents that clearly were the subject of the court's discovery orders." *S. New England Tel.*, 624 F.3d at 147–48. Moreover, Defendants' offer to permit Plaintiff to inspect the 18 crates of tow job dispatch records does not meet Defendants' discovery obligations. *See Laboy*, 2023 U.S. Dist. LEXIS 112479, at *11. Such a "document dump" after the close of fact discovery is further evidence of willfulness. *Aristidou*, 2020 WL 10317398, at *12.

Defendants (particularly Benjamin) argued that health problems have prevented her from searching for responsive documents in Quality Automotive's files. (*See* Oct. 6, 2022 Tr., ECF No. 32 at 16:19–25.) The Court is sympathetic to these issues. However, Benjamin is not the sole defendant, and her staff and her co-defendants could and should have assisted with

---

[3] This egregious conduct might have gone undiscovered if Plaintiff's counsel was not counsel of record in this case and the *Laboy* action.

8

reviewing files to identify the requested records, as the Court reminded them. (*See id.* at 17:1–18:3.)  Indeed, Defendants were sanctioned in *Laboy* for similar willful noncompliance. *Laboy*, 2023 U.S. Dist. LEXIS 112479, at *14.

In other words, "[g]iven the repeated violations and examples of noncompliance with this Court's Orders, the element of willfulness has clearly been established." *Aristidou*, 2020 WL 10317398, at *13. This factor therefore supports dispositive sanctions.

### B. The Efficacy of Lesser Sanctions

"[D]istrict courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *S. New England Tel. Co.*, 624 F.3d at 148 (citation omitted). "[E]ntering judgment against a defendant . . . may be appropriate in 'extreme situations,' as 'when a court finds willfulness, bad faith, or any fault on the part of the' noncompliant party." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 450–51 (2d Cir. 2013) (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)).

Here, Defendants "repeatedly failed to comply despite warnings that lesser sanctions would be imposed." *Barney v. Consol. Edison Co. of New York*, No. 99-CV-823 (DGT), 2006 WL 4401019, at *13 (E.D.N.Y. July 19, 2006), *adopted by* 2007 WL 952035 (E.D.N.Y. Mar. 28, 2007). This continued noncompliance strongly suggests that Defendants were not responsive to proposed lesser sanctions. Further, Defendants' obfuscation of relevant documents and production of purportedly fabricated records, in violation of numerous Court orders and basic discovery obligations, is the sort of "extreme situation" that warrants terminating sanctions. *Guggenheim Cap.*, 722 F.3d at 450–51.

Importantly, Plaintiff has been substantially prejudiced by Defendants' failure to comply with court orders. First, "noncompliance vastly increases the cost of litigation by drawing out deadlines and necessitating motion practice." *Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 631 (2d Cir. 2018). As a direct result of Defendants' violation of discovery obligations, Plaintiff has incurred unnecessary attorneys' fees and discovery costs related to his motions for sanctions. (Oct. 6, 2022 Minute Entry & Order; ECF Nos. 27, 30, 33.) Second, Plaintiff "was deprived of what we can assume would have been evidence relevant to [his] allegations"—i.e., accurate documentary evidence to support his wage and hour claims and to contest Defendants' counterarguments. *S. New England Tel. Co.*, 624 F.3d at 148 ("[E]ven the simple failure to produce evidence in a timely manner in and of itself can support an inference that the evidence withheld would be unfavorable to the noncompliant party.").

Therefore, this factor weighs in favor of terminating sanctions.

### C.  Duration of Noncompliance

"Courts have found noncompliance for a period of several months sufficient to warrant dismissal or default." *Laboy*, 2023 U.S. Dist. LEXIS 112479, at *17 (cleaned up). Here, Defendants' noncompliance started in June 2021 when they violated the Court's FLSA Order. Even assuming the Court credited the potentially fabricated work schedules and the 18 crates of materials "discovered" in December 2022 (which it does not), all are deficient responses to discovery orders. Accordingly, as the *Laboy* court noted, "defendants' noncompliance has continued for over six months and this factor weighs in favor of imposing sanctions." *Id.* at *18.

10

### D. Notice

Terminating sanctions are appropriate where "the court had previously warned [a party] that failure to produce documents would likely result in the imposition of a default judgment." *S. New England Tel.*, 624 F.3d 123 at 148 (citing *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). Here, the Court twice warned Defendants that failure to produce relevant documents could lead to sanctions. (FLSA Order, ECF No. 14 at 3 ¶ 9; Aug. 30, 2022 Minute Entry & Order.) The Court further advised Defendants that, consistent with the *Laboy* court's admonishments, their failure to produce responsive documents could result in a default judgment against them:

> So, Mr. Alfaro, Ms. Benjamin, and Mr. Ketchelian, the reason why you are here today is because what has been going on with the lack of discovery in this case is absolutely unacceptable. . . . I can't speak to what is happening in the case before Judge Levy [*i.e.*, *Laboy*]. That is not the case before me. I do note and will take judicial notice of the docket in that case, which does corroborate [Plaintiff's counsel's] statements, which is that Judge Levy issued an order directing the Defendants to respond to discovery demands, and if they didn't, they would be sanctioned, including the entry of a default judgment against them. Now I am quite sure that [defense counsel] has explained to you what a default judgment means, but it essentially will mean that the Court would find as a matter of law that the Plaintiff in that case has proven their case and that you would be liable for damages. Meaning rather than scrambling to find documents to turn over, you'd be scrambling to pay a money judgment.

(Oct. 6, 2022 Tr., ECF No. 32 at 9:9–10:2). Defendants therefore cannot plausibly contend that they were unaware that failure to produce documents would likely result in imposition of a default judgment. Therefore, this factor, like the others, further supports dispositive sanctions.

### E. Default Judgment & Damages

The Court finds that "rendering a default judgment against the disobedient party" is the most effective response to Defendants' conduct. Fed. R. Civ. P. 37(b)(2)(A)(vi). However,

11

"[t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg., Inc.*, No. 19-CV-4475 (PKC)(SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (cleaned up). To "enter or effectuate judgment," the Court is empowered to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). Accordingly, Plaintiff should be granted leave to seek damages, including attorneys' fees.

### IV.  CONCLUSION

For all the foregoing reasons, the Court respectfully recommends that Plaintiff's unopposed third motion for sanctions at ECF No. 33 should be **granted**, that default judgment should be entered against Defendants, and that Plaintiff should be granted leave to seek damages, including attorneys' fees.

A copy of this Report and Recommendation is being served on all parties via ECF. Counsel shall serve a copy of this Report and Recommendation to their clients forthwith and shall file proof of service by **September 1, 2023**.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Gonzalez. If a

party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
August 31, 2023

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge