UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————X

ROBERTO RODRIGUEZ, JR.,

                Plaintiff,

        v.

QUALITY AUTOMOTIVE SERVICES,
INC., ROSEANNE BENJAMIN,
ANTHONY ALFARO, and HRATCH
KETCHELIAN,

                Defendants.

————————————————————X

**AMENDED REPORT &
RECOMMENDATION**

21-CV-00410 (HG) (LKE)

**LARA K. ESHKENAZI**, United States Magistrate Judge:

      On September 21, 2023, the Honorable Hector Gonzalez, United States District Judge, adopted Magistrate Judge Marcia M. Henry's Report and Recommendation ("R&R") dated August 31, 2023, recommending that a default judgment be granted under Federal Rule of Civil Procedure 37(b) against defendants Quality Automotive Services, Inc. ("Quality"), Roseanne Benjamin ("Benjamin"), Anthony Alfaro ("Alfaro"), and Hratch Ketchelian ("Ketchelian") (collectively "Defendants"), based on their discovery misconduct in this case. (*See* Order adopting R&R, ECF 43; R&R, ECF 37.) After denying Defendant Alfaro's Motion to Vacate the Default Judgment (Order adopting R. & R., Feb. 5, 2025), Judge Gonzalez referred Plaintiff's Motion for Damages on Inquest (ECF 78) to this Court for a Report and Recommendation (Order, March 10, 2025). For the reasons stated below, this Court respectfully recommends that Plaintiff be awarded $504,658.25 plus pre-judgment and post-judgment interest.

# I.    **BACKGROUND**

## A.    **Factual Background**

Plaintiff filed his complaint on January 25, 2021, seeking unpaid wages, liquidated damages, statutory civil penalties, pre- and post-judgment interest, lost wages, and attorney's fees and costs under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and New York Labor Law §§ 190, *et seq.* ("NYLL"). (Compl. ¶ 9.) From approximately March 1, 2017, to October 2017, Plaintiff worked for Defendants as a tow truck driver. (*Id.* at ¶¶ 46, 48, 51.) By approximately February 1, 2019, following Quality's move to a different location, Plaintiff again began working for Defendants in the same capacity and continued to do so until July 17, 2020. (*Id.* at ¶¶ 49-50, 96.)

Plaintiff alleges that throughout his employment, he worked an average of 15 hours per day, 6 days a week. (*Id.* at ¶ 58, 64.) Plaintiff alleges that he was not given regular meal breaks and was required to attend to calls either before or after his scheduled shifts. (Affidavit of Plaintiff Roberto Rodriguez, Jr. ¶ 20, ECF 78-5. ("Pl. Aff.").) Despite repeated complaints, Plaintiff alleges that he was never paid for hours he worked outside of his scheduled workday. (*Id.* at ¶ 32.) On days when Plaintiff had appointments which conflicted with his work schedule, he alleges that he was required to work additional hours in the days following his appointments to make up for any "missed" working hours. (Compl. ¶ 68.) Plaintiff thus allegedly worked approximately 90 hours per week each week of his employment by Defendants. (Pl. Aff. ¶ 19.)

Plaintiff alleges that, despite being promised an hourly rate of $15.00 at the outset of his employment, he was paid a flat weekly wage of between $500.00 and $600.00 in cash roughly each Friday for the workweek beginning the previous Friday and ending Thursday. (*Id.* at ¶ 24-26.) According to Plaintiff, Defendants did not pay him minimum wages, overtime wages, or

spread of hour wages, and did not keep records of the hours he worked and the pay he received. (*Id.* at ¶ 36-39.) In addition, Plaintiff alleges that Defendants did not provide him with wage notices or wage statements during either stretch of his employment, causing him to be unaware of his employment rights. (*Id.* at ¶ 13-14.)

Defendants allegedly responded to Plaintiff's repeated complaints regarding his working conditions and Defendants' unlawful pay practices with threats to send Plaintiff home from work or fire him entirely. (*Id.* at ¶ 21, 32.) Plaintiff alleges that he was fired in retaliation for refusing to complete an additional call that would have required him to work two hours beyond the end of his scheduled workday. (Compl. ¶ 93-96.) Despite requesting the pay he was owed immediately after learning that he had been fired, Plaintiff alleges that Defendants never paid him for his last week of work. (*Id.* at ¶ 98-99.)

### B.    <u>Procedural Background</u>

Plaintiff filed his initial Complaint on January 25, 2021, seeking unpaid wages, liquidated damages, statutory civil penalties, pre- and post-judgment interest, lost wages, and attorney's fees and costs under the NYLL and FLSA. (*See* Compl., ECF 1.) Defendants were properly served with the Summons and Complaint and ultimately failed to timely respond. (ECF 6-9.) Plaintiff requested and received a Certificate of Default from the Clerk of Court. (ECF 10, 11.) Six days after the Certificate of Default was issued, defense counsel filed an Answer on behalf of all Defendants. (ECF 12.) Soon thereafter, then-Magistrate Judge Reyes issued an Order requiring the parties to participate in mediation and setting a discovery schedule pursuant to the Court's usual practice in FLSA cases (the "FLSA Order"). (ECF 14.) The FLSA Order required Defendants to provide Plaintiff with his time sheets and records prior to mediation. (*Id.*)

In July of 2021, the parties engaged in the EDNY's mediation program but were unable to reach a resolution on any of the Plaintiff's claims. (ECF 17.) In September 2021, Plaintiff and Defendants stipulated to Plaintiff's First Amended Complaint ("Am. Compl."), which replaced Defendant "John Doe 1 a/k/a 'Hratch'" with Defendant Hratch Ketchelian. (ECF 18.) Defendants also waived service, as well as all defenses alleging improper service of the Amended Complaint. (ECF 18.) On September 24, 2021, Defendants filed an Answer. (ECF 20.) The Court granted the parties' proposed discovery order on May 31, 2022. ("Scheduling Order," ECF 26.)

Despite the Court ordering the parties to complete all discovery by August 31, 2022, Defendants failed to comply with their obligations under both the FLSA Order and the Court's Scheduling Order, leading Plaintiff to file his first Motion for Sanctions under Fed. R. Civ. P. 37. (ECF 26, 27, 30.) Defendants acknowledged that they had not complied with their discovery obligations in a hearing before Judge Henry, who denied Plaintiff's first Motion for Sanctions without prejudice, but issued a warning that further non-compliance could result in sanctions. (Min. Entry and Order, Aug. 30, 2022.) Defendants continued to not comply with their discovery obligations, and Plaintiff renewed his motion orally in a status conference held before the Court on October 6, 2022. (Min. Entry and Order, Oct. 6, 2022.) The Court again denied Plaintiff's Motion for Sanctions without prejudice, and alerted Defendants that their continued non-compliance could lead to the entry of a Default Judgment as a sanction for their noncooperation. (*Id.*)

Defendants continued to ignore their discovery obligations, and Plaintiff filed a third Motion for Sanctions on October 27, 2022. (ECF 33.) On August 31, 2023, Magistrate Judge Henry issued a Report and Recommendation to Judge Gonzalez recommending granting Plaintiff's third Motion for Sanctions and entering default judgment against Defendants as a sanction for their

continued noncompliance with their discovery obligations. (ECF 37.) On September 21, 2023, Judge Gonzalez adopted the Report and Recommendation in its entirety, entered default judgment against Defendants and granted Plaintiff leave to file a motion for damages. (ECF 43.)

Defendant Alfaro filed a Motion to Vacate and Set Aside the Default Judgment against him on July 25, 2024. (ECF 63.) This Court issued a Report and Recommendation on January 9, 2025, recommending denial of Defendant Alfaro's Motion (ECF 69), which the District Court adopted on February 5, 2025, (Order adopting R. & R., Feb. 5, 2025). The District Court's Order again invited Plaintiff to file a Motion for Damages on Inquest. (*Id.*) Plaintiff did so on March 7, 2025. (ECF 78.) The Court respectfully recommends granting Plaintiff's motion and awarding damages as follows.

## II.    **DISCUSSION**

An entry of default under Fed. R. Civ. P. 37 triggers the same procedures for calculating liability and damages as Fed. R. Civ. P. 55. *See, e.g.*, *Ramgoolie v. Ramgoolie*, No. 16-cv-3345, 2021 WL 8013769, at *2 (S.D.N.Y. Nov. 24, 2021) ("Because a default has been entered against Defendant under [FRCP] 37, the Court follows Rule 55."), *R. & R. adopted*, 2022 WL 669868 (S.D.N.Y. Mar. 4, 2022). A district court must "accept all of the ... factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A default is considered an admission of liability, although it is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Krevat v. Burgers to Go, Inc.*, No. 13-cv-6258, 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) ("A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true."). The "plaintiff bears the burden of presenting proof of damages, which may take the form of

documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-cv-6476, 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020); s*ee also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993). Upon default, however, the movant is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

### A.    Liability under the FLSA and NYLL

First, a plaintiff seeking recovery under the FLSA and NYLL must show that: (1) his claims are timely; (2) the defendants were his employers under the criteria set by the FLSA and NYLL; and (3) that he is a covered employee under the FLSA and NYLL.

### 1.    Statute of Limitations

A plaintiff must bring any claims within the statutes of limitations prescribed by the NYLL and FLSA. *Cao v. Wedding in Paris LLC*, 727 F. Supp.3d 239, 272-73 (E.D.N.Y. 2024). Under the FLSA, the plaintiff has two years to bring any claims unless he brings a "cause of action arising out of a willful violation," in which case he may bring a claim within three years. 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful' and the three year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-cv-1089, 2011 WL 4962397, at *2 (E.D.N.Y Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-cv-133, 2010 WL 2927398 (E.D.N.Y. June 24, 2010)). The NYLL's statute of limitations is six years. N.Y.L.L. §§ 198(3), 663(3). Both statutes begin to run when the employee begins working for the employer. *Rodriguez*, 2011 WL 4962397, at *2.

Plaintiff first began working for Quality on March 1, 2017, and stopped in October of 2017. (Compl. ¶¶ 46, 49.) He again began working for Defendants around February 1, 2019, and continued to do so until July 17, 2020. (Compl. ¶¶ 49, 96.) Plaintiff filed his Complaint on January

25, 2021, three years and nearly 11 months after the beginning of his first period of employment. (ECF 1.) Though Defendants defaulted, thus extending the FLSA's statute of limitations to three years for "willfulness," the FLSA applied here will only cover claims brought in relation to Plaintiff's employment after January 25, 2018. 29 U.S.C. § 255(a); *Rodriguez*, 2011 WL 4962397, at *2. Accordingly, the statute of limitations bars any recovery under the FLSA for Plaintiff's first period of employment with Defendants. Plaintiff may still recover damages, however, for both periods of employment under the NYLL, which is governed by a six-year statute of limitations. N.Y.L.L. §§ 198(3), 663(3). In addition, Plaintiff's second period of employment falls within the statute of limitations for both the FLSA and NYLL.

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances," *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir 1996), though it "applies only in rare and exceptional" cases, *Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007). In considering whether Plaintiff's first period of employment may be brought within the FLSA's statute of limitations under the doctrine of equitable tolling, the Court must ask "whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Lanzetta v. Florio's Enters., Inc.*, 763 F. Supp. 2d 615, 622 (S.D.N.Y. 2011) (citing *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004)). Plaintiff asserts that, prior to his employment with Defendants, he had over 20 years of experience working as a tow truck driver. (Compl. ¶ 56.) Although Plaintiff also asserts that he was not furnished with the required wage notices, (*Id.* at ¶ 84), there is no basis for the Court to conclude that after more than 20 years of employment, Plaintiff had insufficient information to understand his rights as an employee of a towing company. *See Lanzetta*, 763 F. Supp. at 623 ("There was no evidence that Lanzetta, who had more than twenty years of experience in the New

York City restaurant industry when she started to work at Florio's, was unaware of the existence of her claims."). As such, the doctrine of equitable tolling does not bring Plaintiff's earlier period of employment within the FLSA's ambit.

### 2. Employment Relationship under the FLSA

In order to pursue a claim under the FLSA, Plaintiff must show that: (1) Defendants are employers subject to the FLSA; (2) Plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA's coverage. *Laboy v. Quality Auto. Servs., Inc.*, No. 21-cv-2501, 2025 WL 2888046, at *3 (E.D.N.Y. June 9, 2025) (citing *Rowe v. CC Rest. & Bakery, Inc.*, No. 17-cv-01423, 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R. & R. adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019)). Under the FLSA's definition, an employer is "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "[A]n employee may be jointly employed by two or more employers" who are then jointly and severally liable for FLSA violations. *Michalow v. E. Coast Restoration & Consulting Corp.*, No. 09-cv-5475, 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017), *R. & R. adopted*, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

Plaintiff seeks to hold four defendants liable: Quality, a corporation, and Benjamin, Alfaro, and Ketchelian, all individuals. (*See* Compl.) A defendant is an employer under the FLSA if the defendant meets the criteria for either enterprise or individual coverage. *Laboy*, 2025 WL 2888046, at *3 (citing *Rowe,* 2019 WL 4395158, at *4). Under the enterprise coverage test, an employer must have (1) an annual gross sales volume of at least $500,000, and (2) employees handling, selling, or otherwise working on goods or materials that have been moving in or produced for commerce by any person. *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-cv-4623, 2023 WL 2583856, at *9 (E.D.N.Y. Mar. 21, 2023) (citing 29 U.S.C. § 203(s)(1)(A)(i-ii)). In this context,

"commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Local activities meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011). The individual coverage test, alternatively, focuses on the employees themselves and "considers the employment actions of each plaintiff to determine whether the employees themselves are engaged in commerce." *Chen*, 2023 WL 2583856, at *9 (internal citation omitted).

a.    *Corporate Defendant: Quality*

Plaintiff has adequately pleaded that the corporate defendant, Quality, was his employer under the enterprise coverage test. At all relevant times, Quality operated as "a business or enterprise engaged in interstate commerce within the meaning of the FLSA." (Compl. ¶ 21.) Plaintiff alleges that Quality "ha[d] an annual gross volume of sales made or business done in excess of $500,000." (*Id.* at ¶ 23.) Plaintiff also alleges that Quality's "employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." (*Id.* at ¶ 22.) These allegations, taken together, establish Quality as an employer under the FLSA. *See Chen*, 2023 WL 2583856, at *10 ("Although these allegations merely repeat the statutory elements, they are sufficient to establish [the corporate defendant's] employer status under the FLSA."); *see also Huerta v. Victoria Bakery*, No. 10-cv-4754, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) (noting that a court may "infer[] the requisite interstate commerce connection under [a] sensible approach"). As such, the Court finds that Quality is an employer as defined under the FLSA.

b.    *Individual Defendants: Benjamin, Alfaro, and Ketchelian*

Benjamin, Alfaro, and Ketchelian are all employers under the FLSA. "The underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees: 'control over a company's actual operations in a manner that relates to a plaintiff's employment.'" *Tapia v. BLCH 3rd Ave, LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.*

The "economic reality" test established by *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984), sets forth the steps of this Court's inquiry. Under this test, the Court considers such factors as "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citation omitted). Importantly, "[t]he economic reality test encompasses the totality of circumstances, no one of which is exclusive." *Irizarry*, 722 F.3d at 106 (citation omitted).

Plaintiff alleges that at all relevant times, Benjamin, Alfaro, and Ketchelian were "principal[s], officer[s], owner[s], and/or manager[s]" of the corporate defendant, Quality. (Compl. ¶ 25-45.) Plaintiff also alleges that the individual defendants had "the power and authority to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, and determine terms and conditions of Plaintiff's employment." (*Id.* at ¶ 28, 35, 42.) In his affidavit, Plaintiff states that Benjamin was the owner of Quality, oversaw its operations, and set his rate of pay. (Pl. Aff. ¶ 9.) He also states that Alfaro was his "direct manager and supervisor" and oversaw

the day-to-day operations of the company, hired Plaintiff for both periods of employment, set Plaintiff's schedule, and ultimately fired him. (*Id.* at ¶ 10, 31.) Ketchelian is described as Plaintiff's "manager and supervisor," and was responsible for managing Quality's repair garage, supervising Plaintiff when Alfaro was not present, and directing Plaintiff's employment activities. (*Id.* at ¶ 11.) Nearly every workweek, "either Ketchelian or Alfaro handed [Plaintiff his] weekly pay, on Fridays." (*Id.*) These allegations meet the economic reality test factors and establish that Benjamin, Alfaro, and Ketchelian are employers under the FLSA.

### c.    Plaintiff's Employee Status

Under the FLSA, an "employee" is defined quite expansively as "any individual employed by an employer." 29 U.S.C. § 203(e). Plaintiff alleges that Defendants employed him as a tow truck driver from March 1, 2017, to October 2017, and then again from approximately February 1, 2019, through July 17, 2020. (Compl. ¶¶ 46, 48, 49, 96; Pl. Aff. ¶ 2.) Accepting Plaintiff's allegations as true, the Court finds that Plaintiff was an employee of Defendants under the FLSA.

Plaintiff has adequately pleaded that he is not exempt from the FLSA's protections. "The FLSA contains a litany of exemptions but they do not include functions such as [tow truck driver]." *Pintor v. Park King at JFK, LLC*, No. 16-cv-6269, 2018 WL 2074157, at *4 (E.D.N.Y. Feb. 21, 2018) (internal quotations omitted); 29 U.S.C. § 213 (listing multiple exemptions). "Although the FLSA exempts 'any employee employed as a driver or driver's helper making local deliveries,' [p]laintiff[] do[es] not allege that [he was] hired to perform or compensated based on delivery duties." *Pintor*, 2018 WL 2074157, at *4 (quoting 29 U.S.C. § 213(b)(11)).

As such, Plaintiff is not exempted from the FLSA's protections, and the FLSA will apply to claims brought in relation to Plaintiff's second period of employment by Defendants.

### 3. Employment Relationship under NYLL

To establish a claim under the NYLL, "Plaintiff must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to any person employed for hire by an employer in any employment." *Solis v. Tropical Rest. Bar Inc.*, No. 23-cv-17007, 2024 WL 4271234, at *8 (E.D.N.Y. Sept. 19, 2024) (citations omitted); N.Y.L.L. § 190. "Under the [NYLL], the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Pelgrift v. 335 W. 41st Tavern Inc.*, No. 14-cv-8934, 2017 WL 4712482, at *7 (S.D.N.Y. Sept. 28, 2017) (citing N.Y.L.L. § 651(5)-(6); *Garcia v. Badyna*, No. 13-CV-4021, 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014)). Like the FLSA, "[u]nder the NYLL, an employee-employer relationship is established through the degree of control exercised by the purported employer over the employee." *Brito v. Marina's Bakery Corp.*, No. 19-cv-828, 2022 WL 875099, at *8 (E.D.N.Y. Mar. 24, 2022) (citation omitted). "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition," the Court finds that Defendants are Plaintiff's employers under the meaning of the NYLL, and that the NYLL is applicable to Plaintiff's claims. *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-cv-2180, 2022 WL 1018791, at *7 (E.D.N.Y. Mar. 16, 2022), *R. & R. adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022) (quoting *Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015)).

### 4. Joint and Several Liability

Plaintiff has alleged that the individual defendants are jointly and severally liable. (Compl. ¶¶ 31, 38, 45.) Because the Court has found that the individual defendants and corporate defendant

are jointly Plaintiff's employers, each is jointly and severally liable under the FLSA and NYLL for any damages awarded to Plaintiff. *Fermin*, 93 F. Supp. 3d at 37 (collecting cases).

## B.    Damages

The next step after determining that a defaulting defendant is liable is to "conduct an inquiry sufficient to establish damages to a 'reasonable certainty.'" *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). "The burden is on the plaintiff to establish [his or her] entitlement to recovery." *Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009). Plaintiff requests unpaid minimum wages, overtime wages, and spread of hours pay, liquidated damages, statutory damages for wage notice and statement violations, and lost wages incurred as a result of retaliation. (Pl. Memo. L. In Supp. Pl. Mot. For Damages on Inquest ("Pl. Memo. L.") 7-14, ECF 78-3; *see also* Pl. Damages Calculations, ECF 78-7 ("Pl. Damages Calc.").) Plaintiff also requests pre- and post-judgment interest and attorney's fees and costs. (Pl. Memo L. 14-23.)

### 1.    Unpaid Wages

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced..., courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'" *Gunawan*, 897 F. Supp. 2d at 88 (quoting *Zeng Liu v. Jen Chu Fashion Corp.*, No. 00-cv-4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); *see also Kim v. Kum Gang, Inc.*, No. 12-cv-6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need

only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted).

Here, because accurate employment records have not been produced, the Court will presume the accuracy of plaintiff's recollection and estimates of hours worked. Plaintiff asserts that he regularly worked six days a week, putting in 12-hour shifts from 10:00 a.m. to 10:00 p.m. (Pl. Aff. ¶ 16.) Plaintiff also asserts that he was regularly called in early or dispatched to a call near the end of his shift, and therefore typically worked approximately 15 hours each shift, six days each week, or roughly 90 hours each week. (*Id.* at ¶ 18, 19.) He also states that he did not receive meal breaks. (*Id.* at ¶ 20.) Regardless of how many hours Plaintiff worked, Defendants paid Plaintiff a flat weekly rate of between $500-600 throughout both periods of employment. (*Id.* at ¶ 25.)

As set forth below, Plaintiff's calculation of what he is owed for unpaid minimum wages, overtime wages, and spread of hours pay as set forth in his submission to the Court is accepted as true. (*See* Pl. Damages Calc.) Accordingly, Plaintiff is entitled to $135,025.50 from Defendants for his wage claims under the NYLL and FLSA. (*Id.*)

> a.    *Minimum Wages*

Under both the FLSA and NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206; N.Y.L.L. § 652. At all times relevant to this action, the FLSA required Defendants to pay Plaintiff a minimum hourly wage of $7.25. 29 U.S.C. § 206(a)(1). However, during the relevant time period, the minimum wage for New York City businesses with eleven or more employees, which Quality had (*see* Pl. Aff. ¶ 12), was $11.00 per hour on and after December 31, 2016; $13.00 per hour on and after December 31, 2017; and $15.00

per hour on and after December 31, 2018. N.Y.L.L. § 652. Plaintiff asserts that, from the beginning of his employment, he was promised a wage of $15.00 per hour. (Pl. Aff. ¶ 24.) "Where a non-exempt employee has an agreement with his or her employer to be paid at a rate greater than the minimum wage, several courts have found that the failure to pay the promised rate is a violation of NYLL § 191, entitling the employee to damages under NYLL § 198." *Cavalotti v. Daddyo's BBQ, Inc.*, 15-cv-6469, 2018 WL 5456654, at *13 (E.D.N.Y. Sept. 8, 2018).

Because New York's minimum wage is higher than the federal minimum wage, Plaintiff's wages are calculated based on New York Law. 29 U.S.C. § 218(a); *see also Gunawan*, 897 F. Supp. 2d at 89. To determine whether Defendants paid Plaintiff at least minimum wage, it is first necessary to determine his regular hourly rate of pay. To determine an employee's hourly rate, the employee's total weekly earnings are divided "by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5(b). Plaintiff alleges that he was paid between $500.00 and $600.00 each week. (Pl. Aff. ¶ 25.) In light of Defendants' default, the Court assumes that Plaintiff's recollections and estimates are accurate. *See Cabrera v. Canela*, 412 F. Supp. 3d 167, 181 (E.D.N.Y. 2019) (it would be unfair to require more substantial proof of improper compensation when the defendant is not participating in the case and the plaintiff lacks the ability to obtain the defendant's employment records through discovery); *Fermin*, 93 F. Supp. 3d at 42 n.10 (accepting as true plaintiffs' estimated dates of employment, hours worked, and rates of pay for purposes of resolving a motion for default judgment). Plaintiff states that he was routinely paid in cash, and alleges that Defendants did not keep accurate records of employees' working hours. (Pl. Aff. ¶ 27, 30.) As a result, there likely exists no more "precise evidence [of Plaintiff's pay] than Plaintiff's recollections[.]" *Cao*, 727 F. Supp. at 277.

Relying on Plaintiff's recollection, Plaintiff was paid between $500 and $600 per week. (Pl. Aff. ¶ 25.)  Due to the lack of precise records, the Court accepts the calculations of Plaintiff estimating an average pay of $550 per week. (*See* Pl. Damages Calc.). Dividing $550 by 40 working hours, which the Court notes is less than half the hours Plaintiff alleges he worked each week, Plaintiff would only have received $13.75 per hour, which is below the $15.00 he was promised. As such, Plaintiff is entitled to recover damages at a base rate of $15.00 per hour. N.Y.L.L. § 652.

The Court finds that Plaintiff is therefore entitled to recover from Defendants his unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees and costs, and disbursements of this action pursuant to N.Y.L.L. § 663(1), *et seq*. Based on Plaintiff's calculations, the total minimum payment he should have received for the duration of his employment was $64,650.00. (Pl. Damages Calc.) The payment he actually received totaled $57,750.00. (*Id.*) The Court therefore recommends that Plaintiff be awarded $6,900.00 in unpaid minimum wages.

### b.    Overtime Wages

Plaintiff alleges that Defendants violated the FLSA and NYLL by failing to pay him overtime wages. (Compl. ¶ 80.) Plaintiff is entitled to compensation at time-and-a-half under both the FLSA and NYLL for each hour he worked outside of the regular 40-hour workweek. *See* 29 U.S.C. § 270(a)(1); see also 12 N.Y.C.R.R. § 142-2.2. "[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed." *Hernandez v. NJK Contractors, Inc.*, No. 09-cv-4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting *Walling v. YoungermanReynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)). The method for calculating overtime is the same under both statutes, but a plaintiff may not receive

double damages. *See Martinez v. Alimentos Saludables Corp.*, No. 16-cv-1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017).

To calculate the overtime compensation Plaintiff is owed, the number of hours he worked over forty each week is multiplied by 150 percent of the higher of (1) his regular rate of pay, or (2) the applicable minimum wage. *See Long Lin v. New Fresca Tortillas, Inc.*, No. 18-cv-3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019). Here, Plaintiff's overtime rate is calculated using his regular rate of pay, $15.00 per hour, as it is higher than the minimum wage. Plaintiff's calculation of his unpaid overtime wages, totaling $119,362.50, is accepted as true. (Pl. Damages. Calc.) The Court therefore recommends that Plaintiff be awarded $119,362.50 in unpaid overtime wages.

### c.      Spread-of-Hours Pay

New York law provides that "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-1.6. Plaintiff is entitled to be paid the greater of the applicable state and federal minimum wages. 29 U.S.C. § 218(a). "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday," and includes "working time plus time off for meals plus intervals off duty." *Id.*; *see also Rodriguez v. Ridge Rest., Inc.*, No. 16-cv-254, 2020 WL 7711859, at *5 (E.D.N.Y. Dec. 29, 2020) (describing spread of hours law).

As Plaintiff states that he worked over ten hours each workday, accepting Plaintiff's allegations as true, he is entitled to receive spread-of-hours pay for each workday he was employed by Defendants. Plaintiff's calculation of his unpaid spread of hours pay, totaling $8,763.00, is accepted as accurate. (Pl. Damages Calc.) The Court therefore recommends that Plaintiff be awarded $8,763.00 in unpaid spread-of-hours pay.

### 2.    Liquidated Damages

Plaintiff additionally requests liquidated damages. (*See* Pl. Memo. L. 10-12; Pl. Damages Calc.) "Under the FLSA and the NYLL, an employee may recover liquidated damages equal to the amount owed for unpaid minimum wage and overtime; under the NYLL, Plaintiffs may recover liquidated damages for unpaid minimum wage (or promised wages), overtime, and spread of hours compensation." *Chen*, 2023 WL 2583856, at *16 (citing 29 U.S.C. § 216(b); N.Y.L.L. § 198(1-a)). If the employer shows that "the act or omission giving rise to such action was in good faith and that he [or she] had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages. 29 U.S.C. § 260; *see* N.Y.L.L. § 198(1-a) (granting same good-faith exception to liquidated damages). Additionally, "[t]he Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages—that is, liquidated damages under both the NYLL and FLSA." *Chen*, 2023 WL 2583856, at *16 (citing *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)). Plaintiff may therefore be awarded liquidated damages pursuant to the NYLL or the FLSA and may elect the higher amount. *See Charvac v. M & T Project Managers of New York, Inc.*, No. 12-cv-5637, 2015 WL 5475531, at *6 (E.D.N.Y. June 17, 2015), *R. & R. adopted as modified*, No. 12-cv-5637, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015).

Here, Defendants have not attempted to demonstrate a good faith basis for believing the underpayment of wages was lawful. The Court thus recommends that Plaintiff be awarded $135,025.50 in liquidated damages, which is equal to Plaintiff's unpaid wage, overtime wage, and spread-of-hours pay damages.

### 3.    Wage Notices & Wage Statements

Plaintiff also seeks $10,000 total in statutory damages for Defendants' failure to provide wage notices or wage statements as required by NYLL §§ 195(1) and 195(3). (Pl. Memo. L. 12, 13.) New York's Wage Theft Prevention Act ("WTPA") § 195(1) requires employers to give their employees written notice containing the "employee's rate of pay, allowances, and various other information relating to the computation of plaintiff's pay" at the time of hiring. *Deng v. Frequency Elecs., Inc.*, 640 F. Supp. 3d 255, 265 (E.D.N.Y. Nov. 14, 2022). NYLL § 195(3) requires employers "to provide, for each pay period, a statement ('wage statement') showing how that pay was computed including deductions." *Id.* at 265. Plaintiff asserts that he never received a wage notice or wage statements from Defendants. (Compl. ¶ 84, 85; Pl. Aff. ¶ 13.)

New York's WTPA provides for statutory damages for violations of § 195; however, the Second Circuit has held that, to establish Article III standing, a plaintiff cannot rely on "technical violations" of the NYLL but must allege "actual injuries suffered as a result of the alleged...wage notice and wage statement violations." *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 305 (2d Cir. 2024) (citations omitted). The court explained that "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm" and "unless the plaintiff-employee can show that he or she would have undertaken [self-]advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195." *Id.* at 308. The plaintiff must "link the general harms an employee *might* experience to any harms that [the plaintiff] did, in fact, experience." *Id.* at 311 (italics in original).

Here, Plaintiff alleges that:

> For the duration of Rodriguez's employment with Defendants, Defendants failed to furnish Rodriguez with an accurate and complete statement with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

(Compl. ¶ 84.) In his affidavit, Plaintiff states that, during the lawsuit, Plaintiff learned that Defendants generated weekly pay statements for periods of his employment, "although the pay statements are completely inaccurate as to both the hours [he] worked and the pay [he] received." (Pl. Aff. ¶ 28.) Had he received accurate pay statements, Plaintiff asserts that he "likely would have complained" that the wage statements did not accurately reflect the number of hours he worked or what he was paid. (*Id.*)

Plaintiff's allegations are sufficient to establish standing under *Guthrie*. *See, e.g.*, *Solis*, 2024 WL 4271234, at *13 ("Plaintiff sufficiently establishes Article III standing when he alleges that the denial of the statutory right to wage notices and wage statements ultimately resulted in underpayment.") (citing *Guthrie*, 113 F.4th at 309-10; *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) ("a plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has ... a concrete interest" sufficient to establish standing); *Stih v. Rockaway Farmers Mkt., Inc.*, No. 22-cv-3228, 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (plaintiff alleged that failure to provide him with proper wage notices injured him by "denying him the right to be adequately apprised of the terms and conditions of his employment," including allowances defendant purported to claim against his salary).

The penalty for failing to provide a wage notice is $50 per workday, up to $5,000. N.Y.L.L. § 198(1-b). The penalty for failing to provide wage statements is $250 per workday, up to $5,000. *Id.* § 198(1-d). Plaintiff's tenure with Defendants entitles him to recover $5,000 for wage notice violations under § 195(1) and $5,000 for violations of § 195(3). As such, the Court recommends that Plaintiff be awarded $10,000 on his wage notice and statement claims. *Id.* §§ 198(1-b), (1-d).

### 4.    Lost Wages as a Result of Retaliation

Plaintiff also seeks an award of lost wages as a result of retaliation. (Pl. Memo. L. 13-14; Compl. ¶ 95-97, 104-105.) Under the FLSA, "an employer may not discharge or in any other manner discriminate against an employee because such employee has filed a complaint or instituted any proceeding under [the FLSA]." *Belizaire v. RAV Investigative and Sec. Services Ltd.*, 61 F. Supp. 3d 336, 354 (S.D.N.Y. 2014) (citing 29 U.S.C. § 215(a)(3).) Both the FLSA and NYLL permit an employee who has established that they were fired as a result of retaliation to seek lost wages in the form of back pay. *Belizaire*, 61 F. Supp. 3d at 362-63. To establish a *prima facie* case of retaliation under the FLSA, "a plaintiff must show '(1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008) (quoting *Mullins v. City of N.Y.*, 554 F. Supp. 2d 483, 488 (S.D.N.Y. 2008)). The Second Circuit has held that an oral complaint to one's employer is sufficient to constitute protected activity under the FLSA "so long as their complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 117 (2d Cir. 2015) (quoting *Kasten*

*v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)).[1] Here, Plaintiff's complaints to Defendants during his employment are sufficient to establish that he participated in a protected activity under the FLSA. (Compl. ¶ 86-90.)

In addition, under the NYLL, an employer may not retaliate against an employee, including by firing the employee, because he or she complained that the employer had engaged in "conduct that the employee, reasonably and in good faith, believes violates any provision of [the NYLL]." *Belizaire*, 61 F. Supp. 3d at 354. To establish retaliation under the NYLL, a plaintiff must plead that he complained about a violation of the NYLL during his employment, and then was "terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 302 (S.D.N.Y. 2011). Plaintiff has made sufficient factual allegations to establish a retaliation claim under the NYLL. Plaintiff alleges that he complained to Alfaro on or about July 16, 2020, regarding Defendants' practice of sending Plaintiff on calls that prevented him from leaving at the scheduled end of his shift. (Compl. ¶ 95.) The next day, Plaintiff was terminated, and he was not paid for his final week of work. (*Id.* at ¶ 96.)

A plaintiff may receive lost compensation, including back pay, typically through the date of default judgment. *Belizaire*, 61 F. Supp. 3d at 362. "Although it is less clear whether courts must offset back wages with other income…Plaintiff [] only seeks back wages in full for the time unemployed." *Nana v. Le Viking LLC*, No. 17-cv-928, 2019 WL 3244181, at *4 (S.D.N.Y. July 19, 2019). Here, Plaintiff was terminated on July 17, 2020, as a result of raising complaints

---

[1] The original Report and Recommendation issued on November 21, 2025, mistakenly cited *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993), for the proposition that making a complaint to one's own employer, as opposed to making a complaint to a government agency, is not a protected activity within the meaning of the FLSA. As Plaintiff correctly points out in his Opposition to Defendant Ketchelian's Objection to the Report and Recommendation (ECF 95), the Second Circuit overruled *Lambert* in its decision in *Greathouse v. JHS Sec. Inc.*, 784 F.3d at 117. Accordingly, the undersigned is amending the Report and Recommendation to accurately reflect the current law. This amendment, however, does not alter the Court's recommendation with respect to damages.

regarding Defendants' scheduling and pay practices. (Compl. ¶¶ 96, 103.) In addition, Plaintiff was not paid for the final workweek prior to his termination. (*Id.* at ¶¶ 97-99, 100, 102.) After his termination, Plaintiff was unable to find work for eight weeks despite diligent. (Pl. Aff. ¶¶ 34, 35.) Prior to Plaintiff's termination, his regular workweek constituted roughly 90 hours each week. (*Id.* at ¶ 19.). Had Plaintiff been paid his promised wage of $15.00 per hour for 40 hours, and time-and-a-half for the additional 50 hours he worked each week, Plaintiff would have earned a minimum of $1,815.00 each week. For the eight weeks in which Plaintiff was unable to find employment, this Court recommends that Plaintiff be awarded $14,520.00, or $1,815.00 per week for eight weeks.

A plaintiff who establishes retaliatory discharge may also be awarded liquidated damages up to a maximum of $20,000.00. N.Y.L.L. § 215(2)(a). Courts in this Circuit have awarded the maximum award upon a motion for default judgment. *See, e.g.*, *Belizaire*, 61 F. Supp. 3d at 363; *Brito*, 2022 WL 875099 at *22 (awarding maximum NYLL retaliation liquidated damages upon plaintiff's motion for default judgment). Plaintiff was fired on July 17, 2020, and received a default judgment against Defendants on September 14, 2023. For the intervening 164 weeks, this Court recommends that Plaintiff be awarded the maximum statutory penalty of $20,000.00.

### C.   Pre-judgment Interest

Plaintiff also requests pre-judgment interest. (Compl. ¶ 112; Pl. Memo. L. 14, 15.) "[T]he NYLL permits the award of both liquidated damages and pre-judgment interest." *Fermin*, 93 F. Supp. 3d at 48. Pre-judgment interest is calculated on the unpaid wages due under the NYLL, but not on liquidated or statutory damages. *See Diaz v. Rene French Cleaners, Inc.*, No. 20-cv-3848, 2022 WL 4646866, at *11 (E.D.N.Y. Aug. 29, 2022), *R. & R. adopted*, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022). The interest is to be calculated at nine percent annually, and where

damages were incurred at various points, may be calculated from a single reasonable intermediate date. N.Y. C.P.L.R. §§ 5004, 5001(b). The Court recommends that Plaintiff be awarded pre-judgment interest on Plaintiff's total unpaid wages of $192,775.50 from February 1, 2019, the approximate start date of Plaintiff's second period of employment with Defendants, to the date of this Court's judgment at a per diem interest rate of $47.53 ($192,775.50 multiplied by (0.09/365)). (Compl. ¶¶ 49; Pl. Damages Calc.)

### D.    Post-judgment Interest

"Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a)." *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 256 (E.D.N.Y. 2024). "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Duffy v. Oyster Bay Industries, Inc.*, No. 10-cv-3205, 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *R. & R. adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011). Section 1961(a) provides that post-judgment interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a). The Court thus respectfully recommends that Plaintiff be awarded post-judgment interest, to be calculated from the date judgment is entered until the date of payment as required by 28 U.S.C. § 1961.

### E.    Attorney's Fees and Costs

A prevailing party may recover reasonable attorney's fees and costs under both the FLSA and NYLL. 29 U.S.C. § 216(b); N.Y.L.L. §§ 198, 663(1). Courts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d

183, 190 (2d Cir. 2008). The presumptively reasonable fee, otherwise known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). As a threshold matter, the party seeking fees must provide accurate, detailed, and contemporaneous attorney time records. *See Scott v. City of New York*, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam). Plaintiff has satisfied this requirement. (*See* Pl. Mot. Ex. 11, Pl. Att'y Fees, ECF 78-16.)

The next inquiry is whether Plaintiff's counsel requests a reasonable hourly rate. *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). A reasonable hourly rate is "the rate a paying client would be willing to pay....bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Loc. Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted). A judge may determine prevailing rates based on experience presented, knowledge of rates charged in the community, and "the nature of representation and type of work involved in a case." *Arbor Hill*, 522 F.3d at 184 n.2; *see Chambless v. Masters, Mates, & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989).

The records submitted reflect the work of Justin Ames, then a Senior Associate with Akin Law Group and now a Partner with Akin & Salaman, P.C. (Pl. Memo. L. 17; Ames Supp. Decl. ¶ 1, 17.) Plaintiff requests an hourly fee of $350 for Mr. Ames' work. "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Diaz*, 2022 WL 4646866, at *13. This Court finds that $350.00 is a reasonable hourly rate for the services of Mr. Ames.

The court next examines the reasonableness of the number of hours billed to the matter. To determine the reasonableness of hours spent on the litigation, a court makes "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Maldonado v. La Nueva Rampa, Inc.*, No. 10-cv-8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012). The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Id.* at *13 (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). Here, Plaintiff's counsel seeks compensation for 302.4 hours.

Based upon a review of Plaintiff's submitted billing records, the Court finds that the total of 302.4 hours is reasonable under the circumstances. Plaintiff's counsel commenced this case in January of 2021 and litigated professionally for four years, conducting discovery, attending court conferences, drafting and filing motions (including multiple sanctions motions due to Defendants' failure to comply with their discovery obligations), communicating with Defendants and their prior counsel, and ultimately making this request for damages. (*See generally* Dkt.) The Court therefore recommends that Plaintiff be awarded $105,665.00 ($350.00 multiplied by 302.4) in attorney's fees.

Lastly, Plaintiff requests reimbursement for $1,143.25 in litigation costs through March 7, 2025. (Pl. Memo. L. 22.) These costs include the court fee for filing the Summons and Complaint, service fees, and court mediation fees. (Pl. Memo. L. 23; Pl. Expenses, ECF 78-9.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying." *Pichardo v. El Mismo Rincon Latino Corp.*, No. 17-cv-7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (citations omitted), *R. & R. adopted*, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018);

*see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). The Court finds that Plaintiff's request for $1,143.25 is reasonable.

## III.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiff be awarded $504,685.25, representing $64,650.00 in unpaid wages, $119,362.50 in unpaid overtime wages, $8,763.00 in spread-of-hours pay, $135,025.50 in liquidated damages, $10,000.00 in statutory damages for wage statement and wage notice violations, $14,520.00 in back pay for retaliation, $20,000.00 in liquidated damages for retaliation, $105,665.00 in attorney's fees, and $1,143.25 in costs. Additionally, the Court respectfully recommends that prejudgment interest be awarded at a per diem interest rate of $47.53 from February 1, 2019, to the date of this Court's judgment, and that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a). Finally, the Court recommends that Plaintiff be awarded a fifteen-percent increase in damages under the NYLL, not including post-judgment interest, for any amounts that are not paid within ninety days of judgment or the expiration of time to appeal.[2]

---

[2] After reviewing Plaintiff's Opposition to Defendant Ketchelian's Objection to the Report and Recommendation [95], the undersigned is amending its original Report and Recommendation to clarify that since the damages herein are being awarded under the NYLL, "if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Rodriguez v. Solares Corp.,* No. 16-CV-3922 (CBA) (SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, No. 16-CV-3922 (CBA) (SMG), 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). The increase applies only to damages awarded under state law. *See id.* (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD) (RLM), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *report and recommendation adopted*, No. 20-CV-3003 (AMD) (RLM), 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional fifteen percent increase to damages awarded under the NYLL). Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent for any amounts unpaid after ninety days following the issuance of judgment or the expiration of the time to appeal. *See Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16-CV-1907 (ENV) (RML), 2017 WL 7625319, at *7 (E.D.N.Y. Nov. 7, 2017) (finding that the total amount of the judgment would automatically increase if any amount remained unpaid upon the expiration of ninety days following issuance of the judgment).

A copy of this Amended Report and Recommendation is being served on Plaintiffs via ECF. The Clerk of Court is respectfully directed to mail a copy of this Amended Report and Recommendation to Defendant at the following addresses: 122-28 Farmers Boulevard, Queens, NY 11413; 82-25 68th Road, Rego Park, NY 10019; 219-11 82nd Ave, Queens Village, NY 11427; 47-51 40th Street Apt 4A, Sunnyside, NY 11104; 99 Washington Ave, 6th Floor, Albany, NY 12231; and 122-28 Farmers Boulevard, Jamaica, NY 11432. Plaintiffs are also directed to mail a copy of this Amended Report and Recommendation and file proof of service of mailing by December 10, 2025.

Within 14 days of service, any party may serve and file specific written objections to this Amended Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Gonzalez. If a party fails to object timely to this Amended Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

Dated: Brooklyn, New York
      December 8, 2025

*Lara K. Eshkenazi*
LARA K. ESHKENAZI
United States Magistrate Judge